McKinney, J.,
delivered the opinion of the Court.
We perceive no error in the decree of the Chancellor in this cause.
The complainant Davis seeks to avoid the purchase of four small lots of land, made by him, at public auction, on the 23d of June, 1858, on the ground that by-bidders were employed, whereby he was induced to give a higher price for the same, and more than the lands were worth.
It appears that the lauds had been divided into small lots, and were brought to sale by the executors of H. Petway, pursuant to the directions of the will of the testator.
The executors employed a person of experience to aid in the management of the general business of dividing, estimating the value, and selling the lands. A map was made, upon which the several lots were represented, and the minimum value of each marked thereon in figures. This was done by the executors, on consultation with the person employed by them to superintend the sale. The estimated value of the several lots, seems from the proof, not to have been unreasonable.
The proof clearly establishes that, prior to the opening of the sale, no arrangement was made, nor was any thing said on the subject of procuring by-bidders at the sale. But it appears, that during the progress of the sale, when the biddings *669 for any particular lot were below the estimated value, tbe person employed to conduct the sale — of his own accord and without any conference with the executors — would request some one of the by-standers to bid for the same to an amount in no instance exceeding the minimum value previously placed on the same ; nor was more than one individual spoken to in any instance, to bid for the same lot.
It appears, that, perhaps, three different persons had been thus requested to bid during the progress of the sale, for different lots, by the agent conducting the sale, without the knowledge of the executors. But there was no such by-bidding as to any of the lots purchased by the complainant, except one ; and the proof shows that in that instance the lot did not sell for more than its fair value, nor beyond the minimum price fixed upon it. It also appears, that, for some considerable time after his purchase, the complainant seemed to be perfectly satisfied with his purchase.
Upon these facts, the Chancellor dismissed the bill, and we think this was proper.
There is much discussion in the books upon the question, whether a sale at auction may be avoided by the purchaser, because by-bidders or puffers were employed by the owner or auctioneer. The proper way, it is said, is to give notice if such a thing be intended. But yet, the weight of authority, both in this country and in England, seems to be in favor of permitting the owner, without such notice, to employ a person to bid for him, if he does this in good faith, with no other purpose than to prevent a sacrifice of the property under a given price. 2 Parson’s on Con., 417. 2 Kent’s Com., 538, 539, (5th Ed.) Addison on Con., 134, 154. The latter author lays it down, that the vendor may, unknown to the bidders, privately depute a third party to attend the sale and bid progressively for the property on his account, as a defensive precaution to prevent it from being sold at an undervalue ; but he cannot lawfully employ more than one person for such a purpose. If a number of persons are employed as puffers to make fictitious biddings, with the view of taking advant *670 age of the eagerness of buyers to screw up the price ; and not for a defensive precaution to prevent a sale at an undervalue, this is an imposition and a fraud, and avoids the sale.
And if the vendor publicly reserves the right to make one bidding and no more, through a person who is named, and then secretly employs another person to make general and repeated biddings this is such a fraud as will entitle the purchaser to abandon the contract. And if by the advertisement the property is to be sold “ without reserve,” this excludes all interference by the vendor, or others for him, with-the right of the public to have the property at the highest bidding. And, in such case, any arrangement between the vendor and a third party, the result of which is to prevent the property from being sold under a fixed sum, will render the sale void.
It must often be very difficult, of course, to discriminate between an honest design to prevent a sacrifice of the proper, ty, and a fraudulent purpose to impose on bidders : but this does not affect the principle involved in the distinction.
It seems, that in order to avoid the sale on this ground, it must be shown, that underbidders or puffers are employed to enhance the price and deceive other bidders, and that they are in fact misled thereby. 1 Story’s Eq. Jur., sec. 293.
According to this doctrine, it is clear that, in the present case, there is no ground for avoiding the sale.
Nothing more was done by the agent of the defendant’s than was in good faith, considered necessary to prevent a sale of the property at less than its fair value. This much it was lawful and proper to do. 'And there is no pretext for saying that the complainant was misled, or imposed on thereby.
Decree affirmed.